IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-6018-CV-SJ-ODS |
| ) | |
| A. BLAIR STOVER, JR., ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION DENYING PARTIES' MOTIONS FOR SUMMARY JUDGMENT</u>

Pending are motions for summary judgment filed by both parties. The motions (Doc. # 61 and Doc. # 63) are denied because (1) there are disputed issues of material fact and (2) there are legal issues that have not been sufficiently explained.

Ordinarily, the Court does not detail the factual matters that require a trial when summary judgment is denied. However, a preliminary discussion of the Court's views is justified because (1) the Court will be the finder of fact, (2) some of the lingering issues are legal and not factual, and (3) setting forth the Court's views of the issues will help the parties to focus on relevant matters and enable them to present the necessary legal analysis to assist the Court.[1]

This case is brought pursuant to I.R.C. § 7408, which permits a district court to enjoin conduct that violates IRC § 6700. Section 6700 makes it unlawful to organize a partnership, investment plan, or arrangement and, in connection with such activity, provide "a statement with respect to the allowability of any deduction or credit, the excludability of any income . . which the person knows or has reason to know is false or fraudulent . . . ." The injunction should be issued if the defendant violates section 6700

---

[1] The ensuing discussion focuses heavily on Plaintiff's motion. The Court has considered Defendant's motion, and concludes it cannot be granted because there are numerous factual issues in dispute. In addition, Defendant's legal explanations are no more satisfying than Plaintiff's.

and "injunctive relief is appropriate to prevent recurrence of such conduct."  I.R.C. § 7408(b); see also United States v. White, 769 F.2d 511, 515 (8th Cir. 1985).

The Record establishes that Defendant promoted arrangements designed to minimize or eliminate tax liabilities for business owners.  The case involves what the parties have described as "Roth Owned S Corporations," sometimes referred to simply as a "Roth S."  A small business owner would be advised to form a separate corporation under Subchapter S of the Internal Revenue Code as well as a Roth IRA.  The S corporation was designated to provide consulting services to the business, and the Roth IRA held all of the S corporation's stock.  The S corporation would charge the business for the "consulting and other services" of the business's owner – and the amount charged would generally equal the amount of the business's profits.  This would leave no taxable income for the business itself, as expenses would equal revenues.  The S corporation's profits would pass to the Roth IRA without being taxed – meaning a profitable business would effectively have no taxable income.  In 80% or more of the cases, the owner of the business was also the individual whose IRA owned the S corporation.[2]

The critical task is determining whether this arrangement is subject to penalty under section 6700.  This requires the Court to find (1) Defendant knew or had reason to know (2) that the Roth S arrangement was improper.  The Court has difficulty in both respects.  Starting with the second issue, Plaintiff insists the arrangement is improper, and the Court strongly suspects Plaintiff is correct.  However, the Court cannot replicate Plaintiff's legal reasoning in this regard.  There appears to be no statute prohibiting the arrangement.  There was no court decision invalidating the arrangement until September 2009 – well after most of the events at issue.  See Taproot Administrative Services, Inc. v. Commissioner, 133 T.C. 9 (2009).  Plaintiff relies heavily on Revenue

---

[2]Two related arrangements are discussed in the Complaint and in Defendant's Motion for Summary Judgment, but not in Plaintiff's Motion for Summary Judgment.  One involves the creation of a separate "management company" without the additional step of creating a Roth IRA.  The other involved creating an S corporation to own real property, with the shares owned by an IRA.  When the S corporation sold the property at a profit, the profit avoided taxation.

Ruling 92-73, but this does not necessarily establish the legality of Roth S arrangements. "[R]evenue rulings are not binding, but they are authoritative. . . . 'The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" Nelson v. Commissioner, 568 F.3d 662, 665 (8th Cir. 2009) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). Revenue Ruling 92-73 certainly concludes "[a] trust that qualifies as an individual retirement account . . . is not a permitted shareholder of an S corporation," but the explanation is astonishingly short and far from clear. The paucity of analysis and lack of clarity does not immediately suggest it is entitled to controlling weight.

Ultimately, the Court is left with a strong suspicion the Roth S is improper but no ability to explain *why* it is improper. Perhaps the issue is clearer to one extremely well-versed in the Internal Revenue Code's intricacies. In any event, it is Plaintiff's obligation to explain the matter, and it has not done so with sufficient clarity.

Compounding this situation is the need to determine what Defendant knew or should have known. Defendant knew about Revenue Ruling 92-73, but also knew that it was not binding. He obtained legal opinions from other attorneys indicating the ruling was incorrect or poorly-reasoned. Plaintiff suggests Defendant manufactured the supposedly "independent opinions," but this is a matter of factual dispute. Beyond this allegation, the Court is not sure how Plaintiff concludes Defendant "knew or should have known" the Roth S arrangement was unlawful.

Plaintiff argues the S corporations are "shams" in that they do not conduct any business or have any business purpose. The Record strongly suggests (but does not conclusively establish) Defendant's clients continued to operate their businesses in the exact same manner as before creation of the S corporation and simply claimed or asserted "on paper" that the owner supplied management services to the business as an employee of the S corporation. Plaintiff has not explained *why* this fact is relevant. Is the Roth S arrangement lawful if the S corporation performs legitimate business

activities? If not, what difference does it make that the S corporation is a sham?[3] How does it add or subtract from what Defendant knew or should have known? Most importantly, what justifies the characterization of the S corporations as lacking legitimate business purpose?

The Court also expresses concern about the scope of injunctive relief sought by Plaintiff. In particular, Plaintiff seeks an order barring Defendant from, *inter alia*, providing advice relating to federal taxes or aiding or advising anyone with respect to preparing tax returns. However, section 7408 authorizes an injunction prohibiting a party from engaging in prohibited conduct "or any other activity subject to penalty under section 6700 or section 6701." I.R.C. § 7408(b). The statutory authority appears to allow far less than what Plaintiff seeks. Plaintiff also invokes section 7402(a), which authorizes district courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws," but this provision has been relied upon to issue injunctions narrowly tailored to particular activities. The Court has not found – and Plaintiff has not identified – any opinion relying on section 7402 to completely bar an individual from providing tax advice.

The Court's concern in this regard is augmented by Plaintiff's justifications and the need to resolve factual disputes. With respect to the latter issue, Plaintiff contends the disputes are irrelevant – but this leads to further concerns. Specifically, Defendant contends he stopped promoting Roth S arrangements after the IRS issued Notice 2004-8 in January 2004. Notice 2004-8 expressed the IRS' view that Roth S arrangements were fraudulent because they allowed taxpayers to avoid the contribution limits for Roth IRAs. Plaintiff suggests this is irrelevant and does not undercut its argument that an injunction is necessary because Defendant only stopped to avoid getting in trouble. This makes no sense, but more importantly does not demonstrate a need for an injunction. If Plaintiff has not promoted Roth S arrangements for over six years, it is hard to see why an injunction is necessary to stop his conduct. Plaintiff

---

[3]Lest there be any confusion, the Record does not conclusively establish that the S Corporations created as part of the Roth S arrangements are shams. If this matter is relevant, it will have to be decided following a trial.

4

insists Defendant's past conduct demonstrates he will simply find some other scheme that violates the tax laws, but this past conduct seems to follow a similar fact pattern: Defendant takes advantage of vague laws and regulations until the vagueness is clarified in a manner contrary to his actions. While undoubtedly annoying to Plaintiff, it is not apparent that the broad relief sought is justified[4] – particularly when Defendant has never been adjudged guilty or liable for those prior actions.

Finally, the Court notes two matters are discussed at length despite appearing to have no bearing on the issues in this case. The Court will identify them so that the parties will know they should not devote time or attention to them during the trial (or, at least, that they should make some effort beforehand to explain why these matters are important).[5] First, the Court does not presently discern any need for Plaintiff to prove the time and resources expended to investigate Defendant's conduct. The relevance of such facts is not apparent, and the Court has no doubt that time and resources have been expended. Plaintiff does not seek to recover these costs, so there is no need to spend much time at trial on these facts. Second, Plaintiff contends it has "recently learned of Stover's apparent involvement in an abusive charitable contribution arrangement . . . ." The legality of this "arrangement" – as well as Defendant's involvement – are beyond the scope of this case. Plaintiff appears to offer this evidence to demonstrate Defendant poses a risk of continued improper conduct, but what Plaintiff offers is not really evidence – and the Court cannot simply rely on Plaintiff's beliefs and fears to bar Defendant from engaging in *all* tax-related activities.[6]

---

[4]One middle course may be to require Defendant to obtain Private Letter Rulings from the IRS indicating whether any "arrangements" he proposes to market in the future comply with the tax laws.

[5]Currently four days have been set aside for trial. The parties should contact the Court if they believe this is insufficient, but be mindful that according more time may require rescheduling the trial.

[6]What Plaintiff should do is file a separate proceeding and, pursuant to sections 7402 and 7408, seek a preliminary injunction to stop Defendant's continued participation in this "charitable contribution arrangement."

For these reasons, both motions for summary judgment are denied.

IT IS SO ORDERED.

                                            /s/ Ortrie D. Smith
                                            ORTRIE D. SMITH, JUDGE
DATE: April 27, 2010                     UNITED STATES DISTRICT COURT